237651, United States v. Kale. Okay, Mr. Spector. Good morning and may it please the court. My name is Andre Spector and I was appointed by this court to represent Teverson Kale on the appeal. Carjacking is not a crime of violence and Mr. Kale's conviction for three firearm offenses, which meant that he would face 21 years worth of mandatory minimum sentence, must be vacated. Carjacking is not a crime of violence because it can be committed through intimidation, which does not require the use, the attempted use, or the threatened use of force. This court rejected that in Felder and you've tried to argue that Taylor makes a difference now. I think you better get right to that because otherwise Felder controls. That's right, Your Honor, and I'm mindful that Your Honor wrote the Felder opinion and you did not have the benefit of the Taylor decision. The Taylor opinion matters in two critical ways. Well, it talks about attempt. That's right, Your Honor. It talks about attempt of a Hobbs Act robbery. And I'm going to ask you to deal with why the attempt part of the carjacking statute is not a divisible part of the crime. Here, your client was charged with substantive carjacking. I mean, there's no doubt about that and the elements are different. That's right, Your can be divisible in three ways along the injury, the way that the victim is injured. If there's a serious bodily injury, that's one way the crime could be committed. If there is a death that results, that's another way that the crime could be committed. It never said that it could be divisible along the attempted versus completed carjacking. But one of the signals that a crime is divisible is that the sections would have different proof requirements, different elements. And here, attempt and a substantive crime have different elements. That's right, Your Honor. That's one factor. So, I mean, why would you say we would not view these as divisible? Your Honor is right. That's one factor. Another factor, though, is that the punishment is the same for attempted and completed carjacking. If it was different, that would cut in favor of divisibility. So I understand there are factors going both ways, and yet you have the Supreme Court that was pretty clear, albeit deciding a different, slightly in a different context, but saying that the statute is divisible in three different ways. Okay, so we think that the carjacking statute is divisible between a completed carjacking and an attempted carjacking than Felder controls, and there's no more to this argument, right? Well, our principal argument with regard to Taylor, Your Honor, is that Taylor says the inquiry is straightforward. You just look at the elements. And when you look at the elements here, what you see is that force is not required. It's force and violence or intimidation, which suggests that intimidation is something different than force. And so under Taylor's inquiry— Well, yeah, I mean, we know, you know, that there is use of force, attempted use of force, and threatened use of force. And we said in Felder that intimidation is threatened use of force. So that is different from force, but it is also makes it a crime of violence, right? Well, Your Honor, I think the Supreme Court in Taylor is very clear. If it's not requiring any use of force, whether it's attempted, whether it's threatened, then the inquiry is out of time. Okay, but I'm just saying, in Felder, we said intimidation, especially when accompanied with the intent requirement to cause death or serious bodily injury, like, intimidation is the threatened use of force. Because when you go to the person's car and you say, get out, the person understands that if they don't comply, they're going to be subject to the use of force. So what has called that into question? Well, in Taylor, Your Honor, the court said there has to be communication of a threat, of a force. There does not have to be communication with intimidation. You could just—a force, at least, of a threat of force. You can come up to someone's car, as we've explained in our hypothetical in the brief, and just say, give me your keys. Obviously, it matters who says that. Intimidation. Intimidation suggests there are consequences for not complying. Now, what are the consequences that would be reflective of intimidation? Well, it depends on the person who's receiving the threat. Tell me what could be intimidating other than the threatened use of force in a carjacking. Well, I can see that if, as a reasonable person, if someone comes up to you and says, give me your keys, a reasonable person could perceive that to mean that if I don't give the keys, I could be hurt. Well, then you're at trial arguing whether it was or was not intimidation. But for it to be intimidation, it's fear of bodily injury, isn't it? Yes, Your Honor. Okay. You know, if you look at the jury instructions that I think are revealing, the model jury instructions, they say government does not have to prove that the defendant used force in violence if it approves that the defendant acted in an intimidating manner. By threatening violence. That's what would be intimidation. And that is enough under the statute, isn't it? I'm not sure that's enough under the statute, Your Honor.  Wait, it's not? I mean, so if somebody goes up to the driver of the car and says, give me your car or I'm going to beat you up, they wouldn't be guilty of carjacking? Yes, Your Honor, they would be guilty of carjacking. Okay, but now you're saying if they don't say, or I'm going to beat you up, they just rely on the driver's impression that that's what's going to happen. What are you saying? They're still guilty of carjacking, but there hasn't been a threat? There's just been a polite request for the person's car? There has not been a threat of force, of the use of force. There is the interpretation But if the person jumps out of the car, that's because the person is intimidated and thinks there will be force, right? Yes, Your Honor. In theory, you could intimidate someone with something other than force. It's just not a real, it's a very de minimis, right? You could say, please give me your car or I'll tell the New York Post that, you know, something terrible about you. That's not an, that's, it's extortion. I don't know if it's car, does that fall within the carjacking statute or is that extortion? Is that some other? I think that would be Because you can, you can, you can, well, I shouldn't say you can intimidate someone. You can threaten someone with something other than force. But the word intimidation, does that just sort of necessarily imply scaring someone? I think that that's right, Your Honor. It can imply scaring. I grant you it's a very marginal case that we're talking about. It's a very unlikely case. And, and, you know, we have cited some cases in different contexts where you can find a case where there's intimidation and yet there's no use of, of, of force. But what is that, what is that case? So are you saying it's something like Judge Merriam is describing where you're intimidated by some consequence that's not force? Or it's that you've inferred there's going to be a consequence of force, but the perpetrator hasn't actually made the threat. It's the latter, but I'll add that it has to be a reasonable interpretation as well because there's a reasonable element. See, my concern is you're arguing Felder to us. You're challenging the Felder conclusion. That I don't think you can do. I mean, if you want to argue Taylor says that attempts are not categorical violent crime, the point I put to you was, okay, but attempt is, is severable here. The substantive crime is clearly going to fall within Felder. So I don't think you, I mean, are you arguing that we reconsider whether intimidation can be a, can, can be a crime of violence, a carjacking by intimidation? I would think that, that, that argument's closed. We're saying that in light of Taylor, that. What part of Taylor? The requirement that there has to be as part of the elements, the use or the threatened use or the attempted use of force. And it does have to be part of the element of the substantive crime, right? Not on, not the way that we read the jury instructions or the elements because it says intimidation. Tell me, tell me what, what was the failing because I want to be sure I understand your  The statute says the vehicle must be taken by force and violence or by intimidation suggesting that intimidation is something that's different than force and violence. Was there any objection to that? Was there any objection to the charge on that ground? I don't believe so. I did not try the case round, but I don't believe there was an objection on that ground. We have that problem, but in any event, Felder holds that it is a categorically violent crime when committed by intimidation, right? Yes. Felder does hold that. And we're in our positions only that Taylor changes that. And I'm still trying to figure out how do you think Taylor changes it? Because Taylor says you have to look at the elements and that's it. You don't ask, can the crime be committed? But it says that with respect to attempt, because attempt does not require the crime to be completed. I understand that the court was deciding an attempt case, but when it was passing on the categorical violence. Okay, fine. So let's just look at the elements. You're taking a car from the person or presence of another by force and violence or by intimidation. It is true. You could either employ force and violence or intimidation. Now, if it said taking a car from the person or presence of another by force and violence or by the threat of force or violence, then would you still have an argument or that would clearly be a categorical crime of violence? If it's a threat of violence or force, then I think it would be a categorical crime of  Okay. And so in Felder, we said that intimidation means the threat of violence, right? So that means we've already interpreted the statute to say by force and violence or by threatened force and violence, right? Our only position, Your Honor, is that under Taylor, you just look at the elements and the elements as they are provided by the statute and the model jury instructions talk about force and they talk on the one hand, they talk about intimidation on the other. I understand that the... Right, but if you're using the word intimidation to mean the threat of force, the threat of force is a different thing from the use of force, right? So you're suggesting that, oh, well, because they talk about force here and intimidation here, intimidation must be something different from force. But threatening force is different from using force, right? It makes sense that you'd be using different terms, right? I think Congress has demonstrated that it knows how to use the word threat of force, so it could have easily written, just as it did in the 924C statute, by force or threatened force or attempted use of force. Instead, it decided to use the word intimidation. Okay, so what did we get wrong in Felder? How do you take a car by intimidation without threatening force? Just the hypothetical that we discussed. Keys, please. And you go up to someone and they're sitting in the car and say, can I have your keys, please? If, based on the circumstances... And that's like just a polite request for use of the car. It depends on the circumstances. If it's three men surrounding my car and it's a neighborhood known for carjacking, I may reasonably interpret that request to be, if I don't give the keys, that will be... Okay, but also for the perpetrator to be guilty of, to violate the carjacking statute, he has to do that and ask that question with the intent to cause death or serious bodily harm if the driver doesn't comply, right?  So is it possible for somebody to have that intent and to obtain a car by intimidation without threatening force? Again, it's a marginal case, but I think it's possible. But I keep saying it's a marginal case. I don't even understand what the case is. So what is the marginal case? Well, as the court wrote in Taylor, intention is just that. If the intent just lives in the defendant's head. If they don't externalize that intent, if they say, and it could be conditional intent. So you're saying the perpetrator, the guy who's asking for the keys has in his head, if this person doesn't give me the keys, I'm going to beat up or kill that person. And the driver who's responding to the request sees a bunch of people surrounding the car who look very scary and dangerous. So the person gives over the keys. You're saying that has not, there's been no threatened use of force in that scenario? Correct. Okay. I think we have that argument. Can I ask one? I'm sorry, go ahead. Can I just ask you a question about the single photo show up?  Can you just, so there's this, so normally we don't do show up IDs, right? Which is a single photo, but there's this exception that was applied here where the witness being asked to identify is already familiar with the target. Can you just give us a couple of minutes or a minute on sort of, I guess I take it your argument is that exception didn't save the show up here. Yes, Your Honor. Two things. One is that single photo show up is usually reserved for exigent circumstances. You know, there's a rush to catch someone or whatever those circumstances are. There's nothing in the record suggesting any exigent circumstances. Well, but given that there shouldn't have been a single photo showing, the question then becomes, does that preclude the witness from making an identification based on knowledge and perception other than the tainted evidence? And here where the witness knew the person for a considerable period of time, why isn't that a permissible finding by the judge? Which is she's got enough of a basis to make an independent ID. Now you go to trial and you get to bring out everything for the jury and they can weigh it as they want, but there's enough to assume the person can make an independent ID. First, I'm not sure there was a reliability inquiry like you just described, Your Honor, below. And second, the record is very thin. She said she knew him for a while and therefore had an independent basis to make the ID. I meant there's no evidentiary hearing to try to figure out how well did she know him. I mean, the record is very thin, the way it was developed. She had known him for a year. I'm not sure if that means that she had met him a year ago and this is the second time they're seeing or if they've had a continuous relationship. She knew him for a year and she was sitting right next to him in the car when there was a crash, right? Yes. Okay, so you're saying like there's a question as to whether she was able to, like she really could identify him. How well she knew him.  And she only knew him by his alias, it appears. So it also calls into question how well she knew him. And then in addition to her testimony, there also was a detective who also identified him as the driver of the car because he chased him down after the car crashed, right? Right, Your Honor. So does that mean that, you know, even if the witness shouldn't have identified him, there would have been an identification anyway. And so it's harmless. It goes to the harmless area, Your Honor. But as we all know, you know, victim or witness identification really could sway a jury. What does that mean? So it wasn't harmless because the jury would not have believed the detective? Is that what you're saying? Well, it just goes to the harmless area, Your Honor. And our position is if you take out the identification by the victim, the identification by the witness, which both pertain to the same carjacking, you're just left with a detective and you're left with someone else. Well, the first witness, I mean, that's a different issue about the photo array. So I don't know if we would take that out. I'm just thinking about the single photo identification. So even if I were to agree that there shouldn't have been a single photo identification, there still would have been identification of your client at the same transaction because he was chased down by a defendant and apprehended, right? That's right, Your Honor. Okay. Okay. Thank you very much. We're on clear error review on this, right? Abuse of discretion for not holding a hearing, clear error for admitting it. Right. Okay. Thank you. Thank you. Okay. Thank you very much, Mr. Spector. Let's hear from the government. Ms. Seiss. May it please the court. My name is Ellen Seiss. I am Assistant United States Attorney in the Eastern District of New York, and I represented the government in the district court. Following trial, Callie was convicted of seven counts, carjacking three cars, conspiracy to commit carjacking, and using a gun in each. Callie's appeal raises three issues, all carefully decided by the judges below, and this court should affirm. First, Judge Chen correctly concluded that the Supreme Court's ruling in United States v. Taylor does not disturb this concluded federal carjacking is categorically a crime of violence, and therefore, a proper basis for 924C. Indeed, in every other circuit to consider Taylor's application to federal carjacking, they've held the same. Likewise, Judge Chen's evidentiary ruling permitting the admission of two out-of-court identifications, including a witness who knew Callie for a year without a hearing, and Judge Chen's ruling admitting two in-court identifications of the same witnesses and evidence of uncharged drug and robbery crimes were careful determinations after close examinations of the facts and circumstances. Neither were clearly erroneous nor an abuse of discretion, and the judgment should be affirmed. Can I ask you a question about categorical approach? You know, my, our usual review of a categorical approach question has to do with a prior conviction. So here we're talking about the sort of niceties of the statute in the context of the very conviction for that statute, where we have all the facts. So when we're dealing with prior convictions, we sometimes don't have a full transcript, or we don't have a detailed judgment, and we don't always know exactly what subsection someone was convicted under or what substance they were convicted of distributing. Here we know everything about the underlying offenses because it's the same trial. So should we get into this question of the divisibility in the, in the categorical approach, given that we know everything about the conduct that's alleged to be a crime of  Well, yes, Your Honor. I think that this court should use the modified categorical approach because it is a divisible statute between attempt and completed, and in a modified categorical approach, what you're looking at is the defendant was charged with completed carjacking, and he was convicted of completed carjacking. Okay. But even though it's the same trial, we should go through the categorical analysis, the modified categorical analysis. Yes, Your Honor. Even though it's not a prior, we usually, the language always says we were evaluating prior convictions. We're not doing that here. We're evaluating a simultaneous conviction. But same analysis applies from your perspective. Yes, Your Honor. What about the neck tattoo? Yes. Is there any reason to think the witness identified Callie because he's the only one in the array with a neck tattoo? So if Your Honor has A17, and I have colored copies, I understand it's unorthodox to hand up colored copies, but I mean, you really, if you look at the defendant is in position four at A17, you really cannot see the neck tattoo in this picture, such that it would be unduly suggestive to the victim to identify Mr. Callie. But the victim, I mean, the victim did at trial remember the neck tattoo, so it made some impression on him, right? Yes, that's right. He did. And even if Your Honors were to find that the photo array were unduly suggestive, there's independent basis to find his identification as reliable. The defendant, Mr. Callie, knocked on the defendant's window, he got into the car, he sat next to the victim in his car, and he sat there asking for the password to the victim's iPhone, and then he sat there, the testimony at trial was, while he actually changed the iPhone. So he had a good opportunity. He's independently reliable anyway. But, well, I don't know, I guess I'm curious about this. So did the witness mention the neck tattoo at any time before trial? At trial testimony was when the neck tattoo identification came up, yes. So when the police put together this array, they weren't even aware of it. Maybe they didn't even notice it, because as you say, it's hard to notice. That's right, Your Honor. So what do we do with that if at trial a witness brings up some distinctive characteristic that the officers who put together the array had no reason to know about? Your Honor, I think it's not distinctive in this photograph, such that it suggests that the neck tattoo is what caused the victim to choose this defendant. I think you can imagine a scenario where something comes out at trial that had not been used by the witness to describe it before, making the prior identification unreliable. But I don't think that's the case here, given that you cannot really see a neck tattoo. So if the neck tattoo had been prominent and distinctive, it might make a difference. And also, maybe they wouldn't have done this photo array, because somebody would have noticed it when they put it together. That's right, Your Honor. But we're not looking at this in terms of whether we think there is. We're looking at whether the district court clearly erred in finding it, right? That's right, Your Honor. And to the extent, Your Honor, we're to find that there were any errors, harmless. Callie's DNA was found on three different places. That's a different question from whether the judge clearly erred at the start. You're now arguing that even if we think the judge clearly erred, that it was harmless. But we don't have to get to that, do we? Or are you conceding clear error by the district court? No, Your Honor, I don't believe that there was any error on that part. Okay. And what about the one photo identification? Was that appropriate? As Your Honor pointed out, the record established that not only did that witness know Callie for a year, but that that morning he called her on the phone. He picked her up in the stolen car. They drove to one location to get food. They were on their way to drive to another location to get food. And that's when the police attempted to pull over Mr. Callie in the stolen BMW. He sped away. He crashed a car and he ran away. So she had significant opportunity. She knew the defendant. And notably, the defense did not ask Ms. Sincere a single question at trial to test her identification of Mr. Callie. So sorry. So those details mean it was appropriate because what they were doing was showing the photograph just to confirm somebody. Yes, Your Honor. They knew that they knew. So you don't think that that was an error at all? Yes, Your Honor. You think that's acceptable? I think it's acceptable where the witness has indicated that she knows someone to that it's not error to admit it, where it's a confirmatory identification. That's a different question from whether the photograph is suggestive, but she has an independent basis and therefore it doesn't warrant the suppression of her testimony. But if are you arguing that if you know you have a witness who knows someone, you can show them a single photograph and there's no issue. There's no suggestivity issue. No, Your Honor. I'm sorry. I'm not arguing that. So does that mean that they should have done a photo array with her? Well, I think here it would have been prudent to do a photo array. But because she has an independent basis and therefore it doesn't warrant the defendant, there's indicia of reliability of her identification of Callie. That's the indicia of reliability is separate from whether the photo array was suggestive. I mean, there are cases like if you're talking to somebody whose spouse is a suspect, you probably don't do a photo array like which one is your wife, right? I mean, so you're saying this, you know, might fall into that category, but at the very least it was independently reliable based on how well she knew the. That's right, Your Honor. Okay. If the court has no further questions, I ask that you affirm. Thank you. Thank you very much. We'll turn back to Mr. Spector on rebuttal. Your Honors, on Mr. Mehdi's, the victim's identification in terms of reliability, he also testified that he was focused on the gun and how to escape. He was groggy. He spent time looking for his keys that he couldn't find. So there's suggestion that he had very limited opportunity to view the perpetrator and that goes against reliability. That's, you don't get to that question. That's a jury question unless there's been suggestivity in an identification. Now you're, that witness has shown the six person photo spread, right? That's right, Your Honor. Okay. And the judge found that the spread was not suggestive. That's right, Your Honor. Now what's clear error about that determination? Well, as we explained in our brief, the photo array in our view was unduly suggestive because you have two individuals who have a very unusual feature they share, which is this eye, this droopy eye. And so it really draws the viewer to those two individuals and only one of those. Judge Chen addressed that in her ruling. What do you find clearly erroneous about her finding on that point? Well, Your Honor, because between those two individuals, only one has the clothing that the perpetrator identified as, I'm sorry, that the witness identified as the perpetrator having. But he doesn't have completely the clothing, right? It's not exact. It's not identical. Well, as it turns out, as the record develops, actually it is because he has a jacket. He's the only one that has a jacket. He also has these neck tattoos that you know, we can debate how well you can see them. But when Judge Chen is making a determination, I grant you it's not identical. But he over the two individuals, he has the closer match between those. Why does he have the closer match? So if the guy was wearing a dark hoodie and here he's wearing a white hoodie, somebody else is wearing a dark jacket, I don't know, there could be a hood there. It's not totally obvious. Why wouldn't it be more suggestive that the person wearing dark clothing is the closer match than the person wearing a hood that's obviously the wrong color? Like why are you deciding that that's the more suggestive one? He's the one with the hoodie. Right, but it's the hoodie, but it's the wrong color. So why wouldn't the right color be more suggestive? You know, we just think there's enough to get to a hearing, Your Honor. I don't think you can preclude the identification. And what would the hearing investigate? Like, were you really moved by the fact that he was wearing a hoodie? You'd inquire of the witness. Well, part of it is how the six-pack was put together, what identification the victim made. We have evidence of a dispatcher saying there was a jacket that this person was wearing that doesn't make it into the description that the court receives from the government. And so those are the types of things that we could explore at a hearing that the defense team was not allowed to explore. You also could have explored them at trial. Was there a reason not to explore them at trial that you would have explored at a hearing? Well, there's a risk, you know, in front of a jury when you're asking a victim of a crime exactly what you saw. I mean, it's a strategic decision that what you do, and obviously I didn't try the case, but it's a strategic decision what you ask. But the law does hold that unless there's suggestivity, the place to test the reliability of the identification is at trial through cross-examination. So I'm just trying to figure out if there is something that would suggest that you were denied the opportunity to pursue something at a hearing that it made sense for you not to pursue at trial. Judge Chin did instruct the trial team not to re-litigate the suppression motion. Now, it's not clear what exactly that means. But you're not appealing that decision. No, Your Honor. But it's important context as to what the defense team had to work with at trial. We wouldn't argue to the jury that it should have been suppressed. You'd argue to the jury that it's not a good identification, right? There are certain things that you wouldn't know as a trial attorney how far you can go and not upset the trial judge when he instructs you not to go into the suppression hearing. So how the identification was put together, what exactly the witness told the police as to what the perpetrator was wearing, that comes closer to the line, Your Honor. Thank you very much, Mr. Spector. The case is submitted.